BRUCE R. DUNCAN, as General Guardian of the Property of FLORENCE A. LARSON and ELFRIDA A. LARSON, Infants, and J. FRANK BELFORD, Respondents, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

(Supreme Court, Appellate Term, Second Department, March, 1917.)

Guardians — letters of — power of general guardian — insurance (life) — infants — appeal — Code Civ. Pro. § 2650.

> Where letters of guardianship granted after September 1, 1914, when section 2650 of the Code of Civil Procedure took effect, recite that the general guardian shall act jointly with a named person in the collection and receipt of moneys and property of the infants, payment of the amount due them on a policy of life insurance, by a check drawn to the order of the general guardian individually and as general guardian without including the name of the person designated in the letters of guardianship to serve jointly with the general guardian, who was the father of the infants, is no defense to an action to recover on the policy.
>
> BENEDICT, J., dissents.

APPEAL from a judgment in an action to recover on a policy of life insurance.

Murray Downs, for appellant.

Bruce R. Duncan, for respondent.

CALLAGHAN, J.   The sole question involved here is the construction and effect of section 2650 of the Code of Civil Procedure.   It was changed by chapter 520 of the Laws of 1914, amending the Surrogate's Court Act (Laws of 1914, chap. 443), which went into effect

September 1, 1914. So much of that section as is pertinent to this inquiry is as follows: "Where the property of the infant does not exceed the sum or value of $2,000, as shown by the petition, the surrogate may, in his discretion, make an order dispensing with such bond wholly or partly, and directing that the guardian collect and receive the moneys and property of his ward jointly with a person designated in the order, and that all such moneys and other property, so far as the same are conveniently capable of deposit, shall be deposited in the name of such guardian, subject to the order of the surrogate, with such bank, savings bank, trust company, or safe deposit company as shall be designated in such order, and shall be withdrawn or removed only on the order of the surrogate. The letters issued thereupon shall contain the substance of the order."

It appears that the defendant was indebted to the infants Florence A. Larson and Elfrida A. Larson on a policy of life insurance, in the sum of fifty dollars. On the 22d day of September, 1914, one Axel Larson was duly appointed general guardian, jointly with J. Frank Belford, of the infants. The letters of guardianship recited that the said Axel Larson was appointed: " General guardian of the persons and property of the said infants and that the general guardian jointly with J. Frank Belford collect and receive the moneys and property of the said infants and that all such moneys and properties so far as same are conveniently capable of deposit, be deposited in the name of said general guardian, subject to the order of the surrogate, with certain depositaries therein mentioned."

The insurance company made payment of the sum of fifty dollars by a check drawn to the order of Axel Larson individually and as general guardian, without including the name of J. Frank Belford, the person

designated in the order to serve jointly with said Larson. An inspection of the letters of guardianship would have disclosed the limitation placed upon the guardian by the surrogate, which was that he was to act jointly with another party. If the defendant paid the amount involved here without having ascertained the authority of Larson to receive the money or without closely inspecting the letters of guardianship, it then is entitled to no consideration because of the omission to make proper inquiry as to who was entitled to receive the money of these infants.

It is difficult to determine upon what theory the defendant seeks to prevent a recovery in this action. No contention is made that the statute is invalid or that the surrogate in naming the guardian with the limitation expressed in the letters exceeded his authority, and it is conceded that the letters contained a proper reference to the provisions of the statute.

The question as to the power of general guardians over the property of their wards is not involved in this controversy. The legislature undoubtedly has the right to prescribe forms of guardianship. We are not concerned on this appeal with the question as to whether or not the legislature acted wisely in enacting this statute. It is sufficient for us to say that it had the power to make the law and the courts are bound to follow it.

Judgment affirmed, with twenty-five dollars costs to the respondent.

CLARK, J., concurs.

BENEDICT, J. (dissenting). This action was brought to recover fifty dollars, being the amount of the surrender value of a life insurance policy. The answer,

besides containing denials, contained a plea of payment and a denial of any interest in the policy on the part of the plaintiff Belford.

This action involves the construction of section 2650 of the Code of Civil Procedure as it was changed by chapter 520, Laws of 1914, amending the Surrogates' Court Act (Laws of 1914, chap. 443), which went into effect September 1, 1914. The former provision regarding the qualification of guardians of property of an infant, as contained in section 2830 of the Code, was amended by certain changes in the former section, which do not affect the question at issue here, and by the addition of the words: " But in counties containing a city of the first or second class, or a part of such city, where the property of the infant does not exceed the sum of two thousand dollars, the surrogate, before the issue of letters of guardianship of the infant's property, shall make an order directing that the guardian collect and receive the moneys and property of his ward jointly with a person designated in the order, and that all such moneys and other property, so far as the same are conveniently capable of deposit, shall be deposited in the name of such guardian, subject to the order of the surrogate, with such savings bank or safe deposit company as shall be in like manner designated. Such letters shall contain the substance of the order. The cost of deposit with a safe deposit company shall be a county charge and the money or property so deposited shall be withdrawn or removed only on the order of the surrogate."

It was stipulated by the parties that on November 17, 1910, the defendant issued a policy of insurance in the sum of $500 on the life of Axel Larson, and by that policy it agreed to pay the sum of $500 to his daughters Florence A. and Elfrida A. Larson, share and share alike, or to the survivor of them, as beneficiaries with-

out the right of revocation. It was also stipulated that the premiums upon the policy were payable quarterly, and that they were in fact paid up to the 17th day of November, 1914. It was also stipulated that on September 22, 1914, the surrogate of Kings county issued letters of guardianship appointing Axel Larson general guardian of the persons and property of Florence A. Larson and Elfrida A. Larson, who are the same persons described in the complaint in this action. It was also stipulated that by decree of the Surrogate's Court, dated September 22, 1914, it was provided that, '' the general guardian, jointly with J. Frank Belford collect and receive the moneys and property of the said infants and that all such moneys and property so far as the same are conveniently capable of deposit shall be deposited in the name of the said general guardian, subject to the order of the Surrogate * * * that we do by these presents constitute and appoint you, the said Axel Larson, general guardian of the persons and property of the said infants during their minority or until another guardian shall be appointed but only according to the limitations contained in said decree.''

It was also stipulated that Axel Larson duly qualified as such general guardian and entered upon the performance of his duties as such. It was also stipulated that the policy of insurance on the 24th day of September, 1914, had a cash surrender value of fifty-six dollars and thirty-three cents. It was also stipulated that on September 24, 1914, Axel Larson individually and Axel Larson, as general guardian of the said infants, demanded from the defendant company the said cash surrender value of the policy. It was also stipulated that the defendant on October 2, 1914, made its check payable to the order of Axel Larson

and Axel Larson, as guardian of Florence A. Larson and Frida A. Larson, also known as Elfrida A. Larson, for the sum of fifty-six dollars and thirty-three cents in full of the value of said policy; and also that the said check was indorsed by Axel Larson individually and also by Axel Larson, as guardian of said infants, and the proceeds of said check were collected by him.

It was also stipulated as follows: " It is admitted that the issue in this case is whether or not under the decree of the Surrogate of Kings County above referred to and the Letters of Guardianship above referred to the defendant company have the right to make a payment of the cash surrender value under the policy of insurance to Axel Larson without making the check or the payment jointly to J. Frank Belford mentioned in the said Order, Decree and Letters of Guardianship and that if the defendant did have the right under that Decree and Letters of Guardianship why then the plaintiff can not recover but if the defendant did not have the right, then the plaintiff should recover."

By the allegations of the complaint and the admissions of the answer it further appears that by order of the Surrogate's Court of Kings county, dated February 23, 1915, Axel Larson was removed as general guardian of the property of Florence A. Larson and Elfrida A. Larson; and that by another order of said court, dated April 21, 1915, Bruce R. Duncan, one of the plaintiffs herein, was appointed general guardian of the property of the said infants, and ever since said date has been and now is acting as such general guardian. It also appears that by the terms of said order, dated April 21, 1915, " said Bruce R. Duncan jointly with J. Frank Belford were (*sic*) duly authorized and empowered to collect and receive the

moneys and property of said infants and deposit all such moneys subject to the order of the Surrogate's Court as directed in said order," and also that the plaintiffs have duly demanded of the defendant the aforesaid sum of fifty dollars belonging to said infants, which demand has been refused.

Upon the foregoing statements taken from the fragmentary, inexact and ungrammatical allegations and stipulations of the parties the trial court has found in favor of the plaintiffs, but in its conclusion I find myself unable to concur. Without entering upon an examination of the power of general guardians over the property of their wards, a subject which has been ably and elaborately considered by Mr. Surrogate Fowler in the opinions which he has written in reference to the changes in the Surrogate's Court Law made by the amendments of 1914, it will, I think, suffice to say that the statute was not intended — if the legislature can be presumed to have had any intention of its own in passing it — to be used as a trap for persons who, in good faith, discharge their contractual obligations towards minors by the payment of moneys or the delivery of property to the person or persons appointed as the general guardian or guardians of the property of such infants.

I shall not attempt to discuss, as Surrogate Fowler did in *Matter of Hirshfeld,* 88 Misc. Rep. 399, and in a later decision (*Matter of Kaufman,* 93 id. 408), the unfortunate results which were made possible and probable by the enactment of this statute, by reason of the fact that guardians appointed without bond have been recreant to their trust. It will be sufficient, I think, to indicate that the amendment in question attempts to set up a new and hybrid form of guardianship, whereby the ancient office of guardian of the

property of an infant, conferred upon a person under suitable bond, is done away and a creature of statute, two-fold in form, is called into being to take the place. This novel combination possesses, when looked at from one standpoint, the powers and functions of the former office, but only in a rudimentary or crippled state, and when looked at from another aspect it possesses no powers whatsoever.

I took occasion to say in another case (*Haug* v. *Hewitt,* 87 Misc. Rep. 67), in commenting upon this statute shortly after its enactment, that the Supreme Court should not recognize any guardian appointed without bond. See also *Benson* v. *Siemons,* 92 Misc. Rep. 509. My information is that the same position has been adopted by most of the justices of this court in this department. But be that as it may, I for one will not so construe the statute as to hold that where, as in the present case, a defendant has in good faith made a payment of money due to an infant to a person who has received from the Surrogate's Court or the Supreme Court an appointment as sole general guardian of the property of the infant, such payment does not discharge the obligation of the debtor merely because the payment or delivery of property was not also made to some other person as well.

It will be observed that the amendment of the Code does not constitute the " person designated in the order " as a guardian of the infant's property. Such a guardian is trustee of the ward's property and liable to account for it to his ward (*Matter of Camp,* 126 N. Y. 377, 389), and the trust is an express trust. *Mitchell* v. *Mitchell,* 170 App. Div. 452, 457. The statute under consideration does not confer upon the designated person any control of the money or property after its payment or delivery; it does not con-

fer power upon him, either alone or jointly with the guardian, to designate the place of deposit, which deposit must be made in the name of the guardian alone; and it does not confer upon him any power to withdraw or remove such deposit. He has no responsibility to the wards of the person who is appointed as general guardian. He is not selected or nominated by them, even though they may be over the age of fourteen years. The surrogate by the act is given power to designate any person; he is not limited to selecting a clerk in his office for whose acts he would, under section 2475 of the Civil Code, be pecuniarily liable; and the person appointed in the present case is not appointed as a clerk but as an individual and under no responsibility of an official nature or character.

The " person designated in the order " clearly is not a co-trustee. He is a stranger having no office or function as trustee and having no relations of a trust character either toward the ward or toward the general guardian.

The judgment should not stand for another reason. It will be noted that it is not shown, either by the stipulated facts or by the pleadings, what was done with the money after it was paid to the general guardian, who was the father of the infants. It is not shown that the money was not deposited by the guardian in his name subject to the order of the surrogate; nor is it shown that it was not turned over by the former to the present general guardian of the infants. If the infants have sustained no loss, or, if the moneys were used for their support, it would be unjust to permit them to recover it a second time under the facts disclosed here merely to sustain a recovery for a technical violation of this extraordinary statute.

I recommend that the judgment be reversed, with thirty dollars costs, and that upon stipulation of the parties the complaint be dismissed, with costs.

Judgment affirmed, with costs.