impossible its further continuance, to conceal from the parties interested the fact of her reception of the rents collected, and to convert the same to her use. This conduct I deem such dishonesty as would warrant her removal. Aside from this, and assuming that she had no knowledge of the amount of the rents she received in the month of May previously to her father's death, which I do not believe, she should at once, upon the death of her father, (which occurred on the 11th day of May,) or at least as soon thereafter as she had received her letters, have informed herself of their amount, and the disbursements made from them; as she knew, I am satisfied from the evidence, that any balance remaining constituted assets of the estate, for which she was accountable as executrix. Her testimony with regard to the rents received from Wolfe since the death of the testator, and her attempted explanation of her omission to charge herself with them, evidence such a degree of carelessness and inattention as prove her to be an unsafe guardian of the property of others. Her conduct with respect to the rents collected, before as well as after her father's death, is such as to satisfy me that she has not shown that fidelity which the law exacts from a person in her position; but, on the contrary, she has so improvidently and faithlessly managed the property committed to her charge as to render her an unfit person for the due execution of her trust. Section 2817, subd. 3, Code Civil Proc., and cases above cited. It is hardly necessary to add that the fact that the trustee satisfied the decree which charged her with the rents in question—a decree which could have been enforced by proceedings for contempt—does not relieve her from liability to removal. *In re Wiggins*, 29 Hun, 271. I have thus reached a conclusion opposed to that arrived at by the learned referee, and am therefore constrained to overrule his report, and decide that the respondent should be removed from her office as trustee.

### APPLICATION OF HANFORD SMITH AND OTHERS.

RANSOM, S. The evidence warrants the findings contained in the report of the referee, and also the disposition which he made of the requests to find of the petitioner Hanford Smith. The provisions of the Code, as well as the cases cited below, show that it is not necessary to find that the respondent was dishonest, although it is not entirely beyond doubt that she was not. Nor is it necessary to find that she was improvident, in the general sense of that term, to justify her removal; but the grounds specified in the referee's report are sufficient, and compel the court to decree her removal. Code Civil Proc. § 2817, subd. 2; *Estate of Stanton*, 2 N. Y. Supp. 342; *Morgan* v. *Morgan*, 3 Dem. Sur. 616. The case of *Emerson* v. *Bowers*, 14 N. Y. 449, referred to by the respondent's attorney upon the argument, has no application, as the facts relied upon for the removal of the trustee in the present proceeding were not then grounds for removal, and, of course, were not considered. The Code of Civil Procedure has since made them such grounds. See section of Code above cited.

---

### In re HILL'S ESTATE.

*(Surrogate's Court, New York County.    June 12, 1889.)*

EXECUTORS AND ADMINISTRATORS—ACCOUNTING—FAILURE TO DEFEND ACTION.
  Where a claim of an administrator against his decedent's estate is assigned, and referred as a disputed claim, and the administrator fails to make the apparent defense of the statute of limitations, and all the testimony in support of the claim is incompetent, though not objected to by the administrator, the judgment allowing such claim will be set aside upon exceptions to the referee's report on a settlement of the administrator's accounts, and all claims for costs and expenses in connection therewith will be disallowed.

Motion to confirm report of referee.

*Hastings & Southworth*, for administrators.  *George Wilcox*, for contestant.

RANSOM, S.  Motion to confirm report of referee, and to overrule exceptions filed thereto, on the judicial settlement of the accounts of the administrators. The exceptions relate to three items allowed by the referee: (1) Two hundred and fifty dollars paid for legal services; (2) $120.75 paid for costs and disbursements in a suit against the administrators; (3) claim originally owned by one of the administrators, but subsequently assigned to his daughter.  For 30 years prior to her decease, the decedent lived with the administrators, who are husband and wife; the latter being the sister of the deceased. Subsequent to her decease one of the administrators (the husband) presented a claim to himself and his wife, as administrators, and subsequently assigned the same to his daughter.  The matter was referred as a disputed claim, under the statute, and the judgment rendered in favor of the plaintiff.  This judgment exceeds in a considerable sum the entire value of the estate.  The contestant claims that it was obtained collusively, and is void, and that the claim, being that of the administrator, could not be referred, but must be proved before the surrogate on the accounting.  The only testimony taken before the referee was that of the plaintiff, and her father and mother, the administrators.  It appears from the testimony given by the assignee of this claim, the daughter of the administrator, that she was unaware of the fact of assignment, paid no consideration therefor, and knew nothing whatever with reference thereto.  It is clear, therefore, that the assignment was merely colorable.

The apparent defense of the statute of limitations was not interposed to the claim, or any part thereof, and all the material testimony that would in any way be relied upon to sustain the claim was susceptible to objection under section 829, Code Civil Proc.  Had the former defense been interposed, I am of opinion that certainly the greater part of the claim would have been rejected; and, if the testimony is considered as though the latter objection had been insisted upon, the court would find nothing upon which to base a judgment in favor of the claimant.  Reading the testimony taken upon the reference of the claim, and comparing the same with that taken on the accounting herein, I am forced to conclude that the judgment was obtained in such a manner that its authority will not be recognized in this proceeding.  "It has become an established rule, settled in the administration of justice, that, where a judgment has been fraudulently obtained, it may either be set aside by an action brought for that object, or the judgment itself may be defeated by a defense to any legal proceeding taken upon its authority."  *Richardson* v. *Trimble*, 38 Hun, 410, and cases cited.  It is not necessary to bring an action to avoid the record.  *Mandeville* v. *Reynolds*, 68 N. Y. 528.  See, also, *Ward* v. *Town of Southfield*, 102 N. Y. 287, 6 N. E. Rep. 660.  In *Richardson* v. *Trimble, supra*, the term "fraud" is defined by Justice DANIELS, writing the opinion of the general term, as follows: "Fraud, ' in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.'  1 Story, Eq. Jur. (5th Ed.) § 187."

The facts I have briefly recited are established by the evidence, and constitute a valid defense to so much of this proceeding as is based upon the authority of the judgment.  The failure of the administrators to interpose the available legal defenses was such a neglect of duty as to charge them with the damage occasioned to the estate by such failure.  An executor or administrator is bound to set up the bar of the statute of limitations, and will not be allowed in his accounting any sum paid upon a debt which at the time of its payment by him was barred by the statute.  *Butler* v. *Johnson*, 111 N.

Y. 204, 18 N. E. Rep. 643.   The other items which are the subject of excep-
tion were for legal services and costs in connection with the reference of the
alleged disputed claim of the administrator.   I think they should stand or
fall with the determination of the main exception.   Exceptions to the ref-
eree's report sustained.

---

### In re FREY'S WILL.

*(Surrogate's Court, New York County.   September 6, 1889.)*

1. WILLS—PROBATE—EVIDENCE.
    Where a will is on its face properly executed and attested, and one of the sub-
    scribing witnesses, whose memory of other circumstances connected therewith is
    defective, states that she was not asked to sign the will, and the other subscribing
    witness, who also drew the will, and a third person who was present at its execu-
    tion, testify positively to the contrary, and there is nothing to show fraud, the will
    should be admitted to probate.

2. SAME—VALIDITY—REFERENCE TO LETTER.
    Where a testator bequeaths one-fourth of his residuary estate to his executor for
    purposes to be made known by a letter written by the testator, said letter to form
    a part of the will, and the letter cannot be found, the will is valid except as to the
    one-fourth, as to which testator is intestate.

Application for the probate of the will of Joseph B. Frey, deceased.
*George W. Carr,* for proponent.   *Edward B. Crowell,* for contestant.

RANSOM, S.   The instrument, though without date, appears by the testi-
mony to have been executed on the 17th day of April, 1882, the date of a let-
ter referred to in the body of the paper.   The subscribing witnesses were
Charles N. Hilliard, the attorney who drew the will and superintended its ex-
ecution, and Mrs. Clemence Dodge.   During the seven years that succeed the
event, the memory of Mrs. Dodge as to the occurrence had become nearly
obliterated, unless her testimony was given in a disingenuous spirit, which,
from a careful reading of it, seems not improbable.   When the attention of
Mr. Hilliard was first called to the subject after the testator's decease, he said
that his recollection was vague as to the circumstances attending the transac-
tion, but, on reflection, he was able to recall the facts.   If his testimony is to
be credited, the requirements of the statute were substantially complied with.
His statements in that regard are corroborated by the proponent, Mr. Clire-
hugh, whose wife was a sister of the decedent, and is a legatee named in the
will.   The decedent's widow, by her attorney, contested the probate of the
paper, alleging that it was not the decedent's free and unconstrained act, and
that it was not executed in conformity to the statute.   Mr. Hilliard states
that, two days before the paper was executed, Mr. Clirehugh gave him some
headings of the proposed will, of which he took memoranda.   On the day on
which it was drawn, he proceeded to an apartment in the residence of the de-
cedent, whom he had never until then seen, and the provisions of the instru-
ment were discussed by the decedent and Clirehugh, and he then drew the
will.   After its completion, Mrs. Dodge, who was in the apartment of Mrs.
Frey, and who was to remain with her during the night because the decedent
was to leave for Washington, was asked by him to come into the room where
the instrument had been prepared, he stating that she was wanted to witness
a paper for the disposition of his patents, and that he did not say that it was
his will.   In this statement she is confirmed by the testimony of the contest-
ant.   She, however, did not accompany Mrs. Dodge into the other room.
When there, Mrs. Dodge states that no one asked her to sign her name as a
witness to a will.   Her memory is singularly perverse in respect to nearly all
the circumstances attending the execution, and the greater part of her testi-
mony is a succession of answers, "I cannot remember," to the questions pro-
pounded in respect to the successive acts to constitute the valid execution of
the will.   Mr. Hilliard, in 1882, had been admitted to the bar for three years,