In the Matter of the Estate of SAMUEL L. GELLIS, Deceased.

Surrogate's Court, Kings County, September 26, 1931.

Bloch & Aks, for the petitioner.

Joseph F. Murray, for the respondent Fidelity and Deposit Company of Maryland.

WINGATE, S. This proceeding presents a novel attempt to obtain a sizeable sum of money from a surety prior to the final accounting of the administrator, by the instrumentality of the recent enactment embodied in section 115-a of the Surrogate's Court Act (added by Laws of 1931, chap. 562). The facts alleged in the petition, which were duly substantiated on the hearing, demonstrate that the present decedent died on December 17, 1929. His son, Archibald S. Gellis, the present administrator, received letters in that capacity from this court on December 26, 1929, upon giving a bond in the sum of $10,000, upon which Fidelity and Deposit Company is surety.

On October 7, 1930, the present petitioner recovered a judgment against the administrator in the Supreme Court of Kings county for the sum of $6,266.62, and thereafter, by petition verified on October 17, 1930, applied for and received from this court an order directing the administrator to pay him the amount of this. judgment, with interest, upon his filing a bond in the sum of $7,000. This bond was duly filed. Thereafter the petitioner, on March 16, 1931, served a certified copy of the order upon the administrator. Upon the latter's failure to comply with this direction, the petitioner obtained a transcript from this court which he filed in the county clerk's office of Kings county on May 7, 1931, thereafter issuing an execution to the sheriff, who returned it unsatisfied. He then instituted the present proceeding against the surety under the provisions of section 115-a of the Surrogate's Court Act with the object of fixing its liability on the bond and compelling its payment of the sum of $6,266.62, with interest.

It is, of course, primary that a creditor of a decedent's estate may, without presenting his claim to the administrator, or taking any action whatsoever in this court, bring an action in another court upon his claim. (Dec. Est. Law, §§ 116, 117, 140; Michaels

v. *Flach*, 197 App. Div. 478; *De Planter* v. *De Kryger*, 117 Misc. 795.)

The introduction into evidence of a showing of the facts which formed the basis of the judgment recovered in the Supreme Court was one of the chief controversial issues upon the hearing herein. Petitioner contended with great earnestness that such a judgment, upon its entry, becomes binding and conclusive upon the estate and all parties interested therein, and is not subject to re-examination in this court. Certain early Court of Appeals cases cited as authority for this position are of more or less historical, not to say archaeological, interest, but ceased to be determinative precedents almost a generation ago.

The present applicable law is contained in section 210 of the Surrogate's Court Act, which, in turn, is a re-enactment without change of section 2680 of the Code of Civil Procedure, first appearing in chapter 443 of the Laws of 1914. So far as presently pertinent, this section reads:

" Whenever upon any accounting or judicial settlement of an account, the executor or administrator admits and allows a claim or debt against the deceased, other than his own claim, or has theretofore in writing admitted or allowed such a claim or debt, the validity of such claim or debt shall be thereby established.

" When such a claim or debt has been so admitted or allowed, or a judgment against the executor or administrator has been obtained, whether either has been paid or not, any party adversely affected thereby may file objections thereto and may show that the claim or debt was fraudulently or negligently allowed, or paid, or that the judgment was obtained by fraud, negligence or collusion. If the surrogate shall sustain the objections in a case where the claim or judgment has not been paid, the claim shall be deemed to be rejected by the accountant at the time of such determination."

The policy of the law as evidenced by this enactment is to permit " any party adversely affected " to question the actions of the fiduciary in respect to the affairs of the estate, and to adduce facts tending to demonstrate that an alleged claim, whether in the form of a judgment or not, is not properly payable from the assets of the estate.

Whereas the provisions of the section as existing primarily contemplate such action upon an accounting by the fiduciary, it must be obvious that the policy disclosed applies equally to a situation such as is here present, where the enforcement of the claim is attempted prior to the final accounting. It would be the height of folly to determine that evidence to impeach a claim was inadmissible when a question of conditional payment was the sub-

ject of inquiry, but that such evidence could be introduced on an issue of its right to absolute and final payment.

It has frequently been determined in this connection that the recovery of a judgment upon a claim produced no other or different effect than would result from its mere allowance by the estate fiduciary (*Matter of Warrin*, 56 App. Div. 414, 416; *Denniston* v. *Snyder*, 98 Misc. 44, 45; *Matter of Hill*, 7 N. Y. Supp. 328, 329; 2 Con. Sur. 25), and it is well established that in the latter case the basis of the alleged obligation of the estate is open to the fullest and most exacting scrutiny. (*Matter of Taylor*, 251 N. Y. 257, 262, 263, 264; *Matter of Gentry*, 139 Misc. 759, 768, and cases cited.)

The objections of the petitioner to the inquiry on the hearing respecting the basis of the judgment and the manner of its recovery were, therefore, not well taken and the evidence in this regard was clearly admissible. Such evidence demonstrated that the genesis of the alleged obligation occurred on January 2, 1926, when the decedent, who was then the owner of certain real property at Keansburg, N. J., gave to the petitioner a bond and mortgage thereon in the sum of $5,825. On some unidentified date thereafter, prior to his death, the decedent conveyed this incumbered property to his daughter.

The basis of the judgment was a suit by the petitioner on the bond so given by decedent, without any prior effort to realize upon the mortgaged premises in New Jersey. This suit on the bond was instituted against the administrator in the fall of 1930 in the Supreme Court for Kings county, the only process served being a summons with notice. The administrator failed to appear or answer in the action, whereupon judgment was entered by default. The surety here sought to be charged was not made a party to this action, its only information on the subject being received in certain informal communications.

Some evidence was introduced respecting the applicable statutes of the State of New Jersey, but it is questionable whether the pertinent New Jersey law was proved with sufficient definiteness to warrant a decision in respect thereto. In final result, this question is immaterial. The New Jersey statute which is alleged to have been in existence during the entire period in question is stated to read as follows:

" 47. That in all proceedings to foreclose mortgages hereafter commenced, no decree shall be rendered therein for any balance of money which may be due complainant over and above proceeds of the sale or sales of the mortgaged property, and no execution shall issue for the collection of such balance under such foreclosure proceedings.

"48. That in all cases where a bond and mortgage has or may hereafter be given for the same debt, all proceedings to collect said debt shall be, first, to foreclose the mortgage, and if at the sale of the mortgaged premises under said foreclosure proceedings the said premises should not sell for a sum sufficient to satisfy said debt, interest and costs, then and in such case it shall be lawful to proceed on the bond for the deficiency, and that all suits on said bond shall be commenced within six months from the date of the sale of said mortgaged premises, and judgment shall be rendered and execution issue only for the balance of debts and costs of suit." (3 Comp. Stat. N. J.·1880, p. 255, as amd. by P. L. 1881, p. 184.)

If this law was properly proved on the hearing, it demonstrates that no cause of action existed in the obligee upon the bond until after foreclosure proceedings had been had and the deficiency, if any, determined, which procedure was never adopted by him.

If such law was not properly proved, it must follow on ordinary principles, that the law of New Jersey in respect to the matter must be presumed to be the same as our own. (*Matter of Smith*, 136 Misc. 863, 877, 878; *Matter of Mosley*, 138 id. 847, 850; *Matter of Klyszewski*, 140 id. 241, 244, and cases cited in these three opinions.)

The law of New York on this subject has been frequently stated, and is to the effect that equity will not permit a mortgagee to proceed against the general assets of the estate until he has realized on the mortgaged property. (*Matter of Weissman*, 140 Misc. 360, 361, and cases cited.) Until that preliminary has been completed, the obligee on the bond has merely a contingent and unliquidated claim which is provable against the estate only as such, and upon compliance with the provisions of section 207 of the Surrogate's Court Act. (*Matter of Weissman, supra.*)

It follows, therefore, that no matter whether the law of New Jersey or that of New York be applied, the petitioner herein, at the time of the entry of the default judgment, had merely a contingent and unliquidated claim which could not under any theory be made the basis of a judgment against this estate.

Since, under section 210 of the Surrogate's Court Act, a judgment is impeachable for fraud, negligence or collusion and the foregoing facts were demonstrated beyond peradventure, it must follow that the petitioner herein must be held to have no provable claim against the estate upon such judgment. Demonstration of actual fraud or collusion was not furnished, but the very statement of the circumstances surrounding the entry of the judgment, particularly when considered in conjunction with the fact that the adminis-

trator was a lawyer, demonstrate conclusively that if such fraud and collusion did not exist, at least the recovery of the judgment was the direct and proximate cause of the inexcusable negligence of the administrator concerning which the surety as a "party adversely affected" has just cause for complaint.

The petitioner, however, maintained on the hearing that the mere fact of the recovery of a judgment against the principal binds the surety as his privy and forecloses the possibility of its questioning the same. For the reasons hereinbefore noted, it is the opinion of the court that the provisions of section 210 of the Surrogate's Court Act are broad enough to authorize the surety to challenge such judgment, since, unquestionably, it is a "party adversely affected thereby."

However, even if the contrary were to be determined, the same result must follow.

The surety was not a party to the action. The extent to which a surety may be bound as privy is a question upon which there is a vast conflict in judicial determinations. This is noted with particular clarity by the Supreme Court of the State of Vermont in *Ballantine & Sons* v. *Fenn* (84 Vt. 117; 78 Atl. 713), where the court says:

"Stated abstractly, the question is: Is a judgment against a principal admissible in a suit against his surety, and, if so, what is its effect?

"* * * it would be difficult to find in the books a question on which the cases are in more hopeless conflict — some holding that such judgment is *inter alios* and inadmissible, some that it is *prima facie* evidence of the sum due from the surety, and still others that it is conclusive evidence of the sum due."

In our own State this conflict of decision is demonstrated by even a cursory examination of the pertinent cases. On the one hand, there are decisions such as that of the Appellate Division for the First Department in *Smith* v. *Columbia Casualty Company* (225 App. Div. 223), where the court, in reversing a summary judgment against a surety subsequent to the entry of a default judgment against its principal, said (at p. 226): "A judgment of the character referred to herein is not conclusive upon a surety. The surety has a right to appear and defend such action and if it is in a position to establish that the judgment was improperly entered, irrespective of fraud, or that the defendant was not indebted to the plaintiff or was indebted to the plaintiff for a part only of the claim, then the surety may defend to that extent."

In *Conner* v. *Reeves* (103 N. Y. 527) the Court of Appeals says (at p. 532): "to hold that a judgment entered by consent of the parties, and without notice to or approval by the sureties, is, in

the absence of proof of fraud or collusion, conclusive against them, would open the door to the perpetration of secret frauds and subject sureties to a most hazardous responsibility, and to the discretion and judgment of a third person, which might seriously imperil them.  *  *  *  we think the reasonable rule is that a judgment so obtained is presumptive evidence only against the sureties, and that they are at liberty to show that it was not founded upon any legal liability to the plaintiff in the action, or exceed such liability."   To similar effect, see *Farley* v. *Patterson* (166 App. Div. 358); *Mano* v. *Empire State Surety Co.* (153 id. 423).

On the other hand, there are many old cases which agree with the statement of the Court of Appeals in *Casoni* v. *Jerome* (58 N. Y. 315, at p. 321): "  *   *   *  the question whether the plaintiff's demand was a debt against the estate, was necessarily determined by the surrogate on the accounting, and so long as the decree stands unreversed, it cannot be questioned in a collateral action either by the administratrix or her sureties.   Sureties are bound by the decree of the surrogate in such a case, because by their contract they have made themselves privy to the proceedings against their principal, and when the principal is concluded, the surety in the absence of fraud or collusion, is concluded also." To like effect is the determination in *Harrison* v. *Clark* (87 N. Y. 572, 576).

It is perhaps of more or less pertinence that no determination made since the year 1914 has been cited by the petitioner or found by the independent research of the court, in which a surety has been held liable on the bond as a result of a judgment against his principal in which legal notice of the action against the principal and an opportunity to come in and defend was not given the surety.   It is, therefore, believed that the more enlightened modern doctrine regarding the liability of a surety in this connection represents a return to that noted by the court in *Douglass* v. *Howland* (24 Wend. 54, at p. 57), where Judge Cowen quotes with approval the statement of Derbigny, J., in *Lartigue* v. *Baldwin* (5 Mart. [La.] 193): " There is no rule in our laws better understood, than that which allows the surety the right of availing himself of the same means of defense (save those that are merely personal), which the principal debtor could resort to.   That principle is founded on the sacred maxim that no one ought to be condemned without being heard; and that consequently no  person shall be bound by a judgment to which he is not a party."   This is further evidenced by the provision of section 262 of the Surrogate's Court Act requiring a citation of sureties on the bond of a fiduciary upon a voluntary judicial settlement of the account of his principal.

However this may be, it is unquestionable under all decisions of our courts that a surety may impeach a judgment against his principal for fraud or collusion (*Douglass* v. *Ferris*, 138 N. Y. 192, 202), and it is well established as stated in *Richardson* v. *Trimble* (38 Hun 409, 416) that "'fraud' in the sense of a court of equity, properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' (1 Story's Eq. Jur. [5th ed.] § 187.)"

It must follow, therefore, on this basicly sound definition, that the act of the administrator in the case at bar, in failing to interpose the entirely valid and conclusive defense which the estate possessed against the recovery of the Supreme Court judgment by this petitioner, amounted to a fraud upon the surety, which would permit it to impeach the judgment then recovered.

There remains for consideration the order of this court directing the administrator to make payment of the amount of this judgment to the petitioner. The administrator did not oppose this application and in essence assented in open court to its allowance. The petition upon which this application was based stated among other things " that there is money or other personal property of the estate applicable to the payment or satisfaction of petitioner's judgment which may be applied without injuriously affecting the rights of others entitled to priority or equality of payment or satisfaction."

Upon the hearing herein it was shown without contradiction that except for a sum of less than $1,000, the only assets which had ever come into the estate consisted of the proceeds of certain insurance policies on the life of the decedent which had been assigned by him during his lifetime to his daughter. The moneys resulting from these policy collections had been received by the administrator and paid out by him, to and by the authority of the daughter, over nine months prior to the time that the application for payment of this judgment claim was made to this court. The unrefuted testimony further indicated that at the time of this application the total assets of the estate in the administrator's hands amounted only to $1.80. So far as the facts adduced upon the present hearing are concerned, the propriety of the payment over of the insurance moneys by the administrator was *prima facie* established. It follows, therefore, that on the present record the allegation of the petition in the former proceeding of the presence of adequate assets in the estate for the payment of the claim was materially false, and it is primary that an order or decree of a court based

upon a false suggestion of material fact can and should be reopened and set aside by the court making it.

A further pertinent consideration is presented as to whether, in any case, the order of this court made on November 17, 1920, was within the contemplation of the undertaking of the surety. In *Grafton* v. *U. S. Fidelity & Guaranty Co.* (227 N. Y. 162) the Court of Appeals said (at p. 166): " We should look at the undertaking and the recitals therein and the legal proceedings out of which it grew in order to determine its real consideration and conditions."

The bond of the surety in this proceeding is in the usual statutory form to the effect that the administrator " shall faithfully execute the trust reposed in him as administrator  *  *  *  and obey all lawful decrees and orders of the Surrogate's Court of the said county of Kings touching the administration of the estate committed to him."

The purpose of such a bond is to assure the security of the assets of the estate and to make certain that a fiduciary will duly account for all property of the decedent which has or should have come into his hands. A failure of the fiduciary to perform this obligation can in the usual case be satisfactorily determined only upon a final accounting, and were it necessary so to determine, this court would be inclined to hold that the failure of the administrator in the case at bar was not such a default as, without more, would impose liability upon his surety, and that the question of such liability is a matter which could not properly be determined prior to the final accounting.

In conclusion, the scope and effect of the provisions of section 115-a of the Surrogate's Court Act should be briefly considered. This section was obviously inserted in the law for the purpose of obviating the existing cumbersome procedure succeeding a final determination of the ultimate accountability of the administrator. Prior to its enactment it was frequently the case that a claimant against an estate, whether a creditor or distributee, after having the validity of his demand duly adjudicated in the Surrogate's Court, in which the surety company was a party, was compelled to go before another tribunal to enforce his unquestionable rights against the surety which had guaranteed the faithful performance of the trust by the fiduciary. This was an unnecessary and intolerable burden which the Legislature has wisely removed, consonantly with its obvious intent to effect " concentration of jurisdiction as to decedent's estates " in Surrogates' Courts. (FOLEY, S., in *Matter of Haigh*, 125 Misc. 365, 368; quoted with approval by CARDOZO, Ch. J., in *Matter of Raymond* v. *Davis*, 248 N. Y. 67, 72.)

A basic principle of statutory construction requires that the

court, in such an operation, consider the history and general purpose of the enactment and the changes in the law sought to be effected thereby. (*Matter of Hamlin*, 226 N. Y. 407, 414; *Archer* v. *Equitable Life Assurance Society*, 218 id. 18, 22; *City Bank Farmers' Trust Co.* v. *N. Y. Central R. R. Co.*, 253 id. 49; *Matter of Mihlman*, 140 Misc. 535, 536.) In this connection it would be proper for the court to note the report of the Commission appointed for the purpose of considering defects in the laws, pursuant to which the present statutory provision was adopted by the Legislature. (*People* v. *Schweinler Press*, 214 N. Y. 395, 404; *Matter of Mihlman*, 140 Misc. 535, 537; *Matter of Byrnes*, FOLEY, S., 141 id. 346.) This report, which is found in Legislative Document (1931) No 69, at page 20, fully states the reasons for this enactment as follows: " The Commission believes that the enforcement of the liability of a surety upon an official bond of an executor, adminis-- trator, guardian or testamentary trustee, should be simplified and expedited *after the liability of the principal has been duly established in an accounting proceeding to which the surety is a party*. With this object in view it is proposed that after an execution against the property of the principal has been returned wholly or partly unsatisfied, a petition may be filed and process issued·to the surety and to other persons interested. At present the bond may be ·enforced only by means of a subsequent action in another court under the provisions of sections 113 to 116 and section 306 of the Surrogate's Court Act." (Italics not in original.)

This statement, which was duly presented to the Legislature and unquestionably induced the enactment in question, demonstrates that the intended scope of the statute does not contemplate a proceeding to′fix the liability of the surety upon a mere intermediate order of the nature obtained in this proceeding but only after the rendering of a final decree.

Even were a contrary construction to be adopted, the same result would be inevitable in the case at bar. The final sentence of subdivision 1 of section 115-a reads: " Upon the return of the citation, the surrogate *may* make a decree fixing the liability on the official bond of the surety * * * and directing payment to the * * * person interested, *as justice may require.*" (Italics not in original.)

Obviously, on the language used, such action on the part of the surrogate is discretionary only, and such discretion is to be exercised in the furtherance of justice.

In the proceeding at bar, where it has been demonstrated that petitioner's claim had no sound legal basis, that its payment would be in contravention of the well-established equitable principles of

the courts of this State, and finally, that its prosecution to this point has been made possible only by the culpable negligence of the administrator, the promotion of justice requires that any discretion possessed by the court should be exercised adversely to the claimant.

For the reasons noted, the petition is, therefore, denied.

Proceed accordingly.