In the Matter of the Estate of GUISEPPE REPPUCCI, Deceased.

Surrogate's Court, Kings County, December 1, 1932.

*James J. Lanzetta*, for the petitioner.

*Harold E. Lippincott*, for National Surety Company.

WINGATE, S. This is a contested application under section 115-a of the Surrogate's Court Act for fixing the liability of a surety upon an administrator's bond. The facts have been stipulated, in consequence of which only questions of law are presented for determination.

Guiseppe Reppucci died in the fall of 1928 and letters of administration upon his estate were issued by this court to Gilio Stramese and Carmella Reppucci on November 28, 1928. The National Surety Company furnished the usual administrator's bond in the sum of $3,000. Pending the complete administration of the estate, Carmella Reppucci died, and Gilio Stramese continued as sole administrator. He was at that time, and has ever since continued to be, a non-resident of the State of New York, living in New Jersey. In September, 1930, his accounts were settled, showing a balance in his hands of $1,952.55, which, in a decree entered on the 24th of September, 1930, he was directed to disburse in the

manner therein specified. Among other directions, this decree contained the following: " That he then pay over to Gilio Stramese, as general guardian of Anna Reppucci, an infant daughter of the above decedent, in payment of her share in this estate, the sum of Six hundred sixteen and 42/100 Dollars ($616.42), to be paid jointly with the guardian clerk of the Surrogate's Court of New York County.

" That he then pay over to Gilio Stramese, as general guardian of Louis Reppucci, an infant son of the above decedent, in payment of his share of this estate, the sum of Six hundred sixteen and 41/100 dollars ($616.41), to be paid jointly with the guardian clerk of the Surrogate's Court of New York County."

Prior to the entry of this decree, Stramese had been appointed guardian for these two infants by the Surrogate's Court of New York county, such appointment, although not expressly so stipulated, being obviously jointly with the clerk of the Surrogate's Court pursuant to the provisions of section 180 of the Surrogate's Court Act.

On or about October 1, 1930, he withdrew from Emigrant Industrial Savings Bank, in which the estate funds were kept, the entire balance of the account. This was effected by an ordinary receipt withdrawal slip frequently used in savings banks, which read as follows (the italicized portions being printed and the balance written):

" *Book No.* 1100298        *Received from*
        *Emigrant Industrial Savings Bank*
Nineteen hundred Ninety-six and 71/100 *Dollars* & Int.
        71
$1996 xx
        64
        22    Int.
_____
 2019  40
" *Name*   Gilio Stramese
        Administrator
" *Present* the estate of Guiseppe
" *Address*   Reppucci 20 Branford Pl.,
                Newark, N. J."
Upon this receipt was stamped
                " Payment consented to
                " H. A. KEARNEY
                    " *National Surety Company*,"
the name " H. A. Kearney " being in writing.

He never made the payments directed by the decree of this court hereinbefore quoted, and, according to the uncontroverted statement upon the argument has been disbarred as an attorney in New Jersey, and has decamped.

On or about March 9, 1932, Stramese was removed as general guardian for the infants by the Surrogate's Court of New York county, and the present applicant, Franklyn V. Caruso, was substituted in his place.

A certified copy of the final decree of this court was duly served upon the National Surety Company and an execution has been issued against Gilio Stramese to the sheriff of Kings county and has been returned wholly unsatisfied.

The question presented for determination concerns the authority of this court under section 115-a of the Surrogate's Court Act to fix the liability of the surety on its bond to the extent necessary to make good the unpaid sums directed to be paid by the portions of its decree of September 24, 1930, above quoted.

The surety has appeared and interposes four objections to the granting of the relief prayed, as follows: *First*, that section 115-a of the Surrogate's Court Act, which was added by chapter 562 of the Laws of 1931, in effect April 21, 1931, cannot be invoked in this proceeding by reason of the fact that the decedent died, the bond was issued and the decree on accounting made, prior to its enactment; *second*, that in any event the execution issued to the sheriff of the county of Kings was not a sufficient compliance with the terms of this enactment; *third*, that the petitioner has not exhausted all other remedies and should, prior to having brought this proceeding, have instituted one for the punishment of the administrator for contempt for failing to carry out the terms of the decree, and, *fourth*, that the default complained of in the failure to comply with the quoted directions in the decree of this court was one by Stramese, not in his capacity as administrator of this estate, but as guardian, for which default the surety is not liable on its bond. These contentions will be considered in order.

The purpose of the addition of section 115-a to the Surrogate's Court Act was considered by this court in its opinion in *Matter of Gellis* (141 Misc. 432, at pp. 440 *et seq.*). It is obvious for the reasons therein given that the object envisaged was merely to simplify the procedure in fixing the liability of a surety upon a fiduciary bond in the Surrogate's Court, and to obviate the necessity, theretofore existing, of having that liability determined in the Surrogate's Court and then compelling the suitor to seek another forum for the enforcement of the rights thus fixed. No change other than a procedural one was made thereby. The enactment

is contained in section 6 of chapter 562 of the Laws of 1931, which chapter, in other sections, made a number of other alterations in the provisions of the Surrogate's Court Act and in other laws. Respecting the applicability of these various changes, it was provided in section 10 of the same law: " This act shall take effect immediately; provided, however, that the provisions of sections two, three, four and seven of this act and the amendments made by section five of this act to various sections of the Surrogate's Court Act shall apply only to the estates or wills of persons dying after the date of the taking effect of this act, and the provisions of law affected by such sections in force prior to the taking effect of this act shall apply to the estates and wills of all persons dying prior to the date of the taking effect of this act, with the same force and effect as if they were not hereby amended."

This direction that the act should take effect immediately, with the exception of the specified sections, which did not include the one enacting section 115-a, indicates an intention of the Legislature that this procedural addition should apply to the remedy available in enforcing the rights in question at all times after April 21, 1931, irrespective of the time when the particular substantive right to which the remedy was applicable matured. That such an enactment is well within the powers of the Legislature has been determined times without number. In *Penniman's Case* (103 U. S. 714) the court says (at p. 720): " The general doctrine of this court on this subject may be thus stated: In modes of proceeding and forms to enforce the contract the Legislature has the control, and may enlarge, limit, or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right."

Like determinations have frequently been made in the courts of this State, the Court of Appeals saying in *Matter of Trustees of New York Protestant Episcopal Pub. School* (31 N. Y. 574, 585), " the power of the Legislature to regulate and change the forms of procedure, in all cases, where no vested rights have been acquired under the existing law, cannot be questioned." (See, also, *Howard* v. *Moot*, 64 N. Y. 262, 268; *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 id. 429, 441; *United States* v. *Union Pacific Railway Company*, 98 U. S. 569, 606.)

Since the effect of the enactment is merely to simplify the procedure of enforcement of the liability of the surety upon its bond, by giving concurrent jurisdiction to the Surrogates' Courts in this regard, it is entirely apparent that section 115-a of the Surrogate's Court Act provides a remedy available to the petitioner in the present proceeding.

The section provides, in substance, that the petition may be presented where a decree has been made in any proceeding directing payment by a fiduciary and an execution against his property has been returned unsatisfied.

In its "replying memorandum" the surety company for the first time raises an issue respecting the effectiveness under the statute of the execution issued against the administrator to the sheriff of Kings county on the decree of this court. Its contention in this regard is: "that the issuance of an execution, as prescribed in Section 115a S. C. A., requires that a valid execution shall be issued, to-wit, to a sheriff of the proper county, *and not to any sheriff*, indiscriminately."

Counsel fails to indicate what county he deems a "proper county" in a case like the present, where the fiduciary is a non-resident and is not shown to have any property whatsoever within the State of New York.

The only direction in the statute (Surr. Ct. Act, § 115-a) respecting the place of issuance of the execution reads as follows: "If the principal debtor is a resident of the state, the execution must have been issued to the county where he resides."

In most respects, the remedy given by section 115-a is merely a re-enactment of section 113 of the Surrogate's Court Act, which has existed in substantially unaltered form since the Laws of 1836. The one essential change which it effects is to confer on Surrogates' Courts a power to enforce this liability where previously it resided only in other tribunals. Section 113 contains the identical language re-enacted in section 115-a, above quoted, respecting the place of execution, and no more. It follows, therefore, that if the implied contention of the present surety is correct, that an execution, to comply with the provisions of the statute, must have been issued to a county in which the principal debtor resides or has property, it is impossible as a result of any decree or judgment of a court of the State of New York to hold a surety to its contract liability in such a case, and has been impossible during the entire legal history of the State of New York. If such be the fact, it is somewhat remarkable that no surety has discovered it in the period of almost a century during which such enactments have been in force, and that the issue has never been raised in any reported case.

The general provisions of the Civil Practice Act relating to the issuance of executions are found in sections 648, 775 and 1128. The first named, which is entitled, "To what counties execution may issue," reads in part: "An execution against property can be issued only to a county in the clerk's office of which the judgment is docketed."

Section 775 relates to the manner of issuing execution as a condition precedent to the maintenance of supplementary proceedings, and subdivision 3 thereof directs that if the judgment debtor is not then a resident of the State, the execution shall be issued to the sheriff of the county where the judgment roll is filed, unless the execution was issued out of a court other than that in which the judgment was rendered.

Finally, section 1128, while providing that the return of an unsatisfied execution shall be a condition precedent to an action against sureties in the instances there envisaged, is silent on the subject of the particular county to which the process shall be directed.

For present purposes it will be sufficient to state that the sole limitation on the place of issuance of the execution contained in section 115-a of the Surrogate's Court Act does not apply, on the facts of the case; that the only county in which the judgment is docketed is Kings county; wherefore, under section 648 of the Civil Practice Act, that was the only county to which execution could lawfully issue; that it has not been demonstrated that any rights of the surety were prejudiced by the course pursued; and, finally, that the surety has failed to sustain the burden resting upon it, of demonstrating either by argument or authority, that the Legislature intended to place any conditions on the exercise of the right other than those expressly enumerated in the section.

The third contention of the surety, that this proceeding cannot be maintained because of the failure of the applicant to initiate contempt proceedings against the non-resident defaulter, if seriously advanced, which may well be doubted, is capable of disposal in a word. The adoption of such a course would have been an utterly futile gesture, in view of the administrator's non-residence; such procedure is not made a condition precedent to the institution of this proceeding by the wording of the statute, and is, by the terms of section 84 of the Surrogate's Court Act, a wholly permissive and non-obligatory act on the part of those coming within its purview.

The final contention, relating to the construction of the decree itself, is possible of almost as ready disposal. The portions of the document in question, which have been hereinbefore quoted, directed the administrator to pay over to himself as guardian the sums specified, with the additional pregnant provision " to be paid jointly with the guardian clerk of the Surrogate's Court of New York county." To maintain that this direction would be satisfied by a payment to Gilio Stramese alone, would require the complete deletion from the direction of the final sixteen words just quoted,

which would violate one of the most fundamental rules of documentary construction. (*Fleischman* v. *Furgueson*, 223 N. Y. 235, 239; *Adams* v. *Massey*, 184 id. 62, 69, and cases cited.) The only construction possible, which would give effect to all of the words of these two decretal clauses, is that the administrator was to pay the specified sums to himself as guardian jointly with the clerk of the Surrogate's Court. He failed to do this, wherefore he is in default in his obligations as administrator of the estate, and his surety is bound to respond therefor. (See *Duncan* v. *Mutual Life Ins. Co.*, 99 Misc. 280.)

The suggestion that the alleged laches of relatives of the infants is to be imputed to them, possesses no possible merit. The proximate cause of the loss was the act of the surety in assenting to the withdrawal by the administrator of the estate funds without troubling to see to their proper application.

The petitioner as guardian for Anna Reppucci is entitled to recover from the respondent the sum of $616.42, with interest thereon at six per cent to the date of payment, such payment to be made to him jointly with the guardian clerk of the Surrogate's Court of New York county; he is likewise entitled to a recovery in the sum of $616.41, with like interest, such payment to be made to him as guardian for Louis Reppucci jointly with the guardian clerk of the Surrogate's Court of New York county.

The prayer of the petition is, therefore, granted, with costs payable by the respondent personally. The court regrets its inability to comply with the further prayer of the petition for the granting of an allowance to the counsel for the petitioner. The Surrogate's Court Act gives no authority therefor in a case like the present.

Proceed accordingly.