In the Matter of the Estate of HELEN STERN, Deceased.

Surrogate's Court, Kings County, November 30, 1936.

*P. Benjamin Kaufman,* for Carrie E. Stern, as executrix of Solomon C. Stern, a docketed judgment creditor of decedent, petitioner, and for Abraham & Straus, Inc., a docketed judgment creditor.

*Albert. J. Hiers,* for the New Amsterdam Casualty Company, surety.

*Joseph Henry Cohen,* for Caroline Stern Lauricella, as administratrix.

*Harry Burtensky,* in person.

WINGATE, S. The instant proceeding presents a question of procedure under section 115-a of the Surrogate's Court Act, which is novel, so far as the diligence of counsel and the independent research of the court have disclosed.

Caroline Stern Lauricella was appointed administratrix of the estate of Helen Stern on April 19, 1935, and qualified as such by filing a bond in the penal sum of $3,500 with New Amsterdam Casualty Company as surety. Her accounts in that capacity were settled by decree dated October 30, 1936, pursuant to the terms of which she was charged with the sum of $4,357.39 which she was directed to pay out in two general classes of payments aggregating $699.83 and $3,657.56, respectively. The former and preferred total was directed to be paid to four named parties or their attorneys for costs, and to the surety for unpaid bond premiums. The decree then proceeded:

" Ordered, adjudged and decreed that out of the balance of $3,657.56 remaining in the hands of said administratrix as assets of the estate, the said administratrix pay the judgment creditors herein in the order of preference as follows:

" (a) To Carrie E. Stern, as Executrix under the last will and testament of Solomon C. Stern, deceased, for a judgment docketed April 8, 1930, by Solomon C. Stern for $1,754.75, with interest to date of this decree of $691.76, making a total of $2,446.51.

" (b) To Abraham & Straus, Inc., for judgment docketed May 20, 1930, for $688.77, with interest to date of this decree, of $266.65, making a total of $955.42;

" (c) To Harry Burtensky, for judgment docketed October 18, 1930, for $1,510; the balance, or the sum of $255.63."

The administratrix having failed to make the directed payment to Carrie E. Stern, the latter issued execution against her and this has been returned wholly unsatisfied. She now seeks a fixation of the liability of the surety on its bond and a direction for payment of the sum so to be fixed.

The administratrix and her surety and all of the other payees under the decree have been served or have appeared in the proceeding, and all the respondents with the exception of Abraham & Straus, Inc., and the administratrix have filed duly acknowledged waivers consenting that " an order be made fixing and determining the liability of the " surety.

The surety has answered, admitting the essential allegations of the petition, expressing its willingness, if permitted, to pay into court the full amount of its obligation under its bond and be wholly discharged from the matter, alleging the failure of the payees under the decree, other than the petitioner, to issue execution and praying that if an order be made directing payment by it to any creditor, that such " order contain a provision that an execution has been issued and returned unsatisfied by the creditor directed to be paid, or in the alternative that the issuance of an execution against Caroline Stern Lauricella therefor, has been waived by her, if such be the fact."

In purported response to the last suggestion, an affidavit has been filed by an attorney who describes himself as associated with the attorney for the administratrix, in which he asserts on information and belief that the administratrix " is entirely without funds with which to pay the persons who by the decree are entitled to receive payments out of the assets of the estate." It may be noted parenthetically that this affidavit fails to state that none have been paid by her in whole or in part.

This affidavit then continues: " Your deponent believes that it would be for the best interests of the administratrix that no further executions be issued by way of the other creditors of the estate and on her behalf hereby waives the further issuance of any such executions."

The composite result of the record is to leave the status of all parties other than the petitioner in an extremely confused and unsatisfactory state. It is apparently the desire of all concerned that this court adjust the rights and equities of all, with a minimum of effort on their part, but they seem to fail to appreciate that a proceeding under section 115-a of the Surrogate's Court Act is a separate and independent proceeding, which must have a substratum of solid fact to justify any judgment attained.

As this court pointed out in *Matter of Reppucci* (145 Misc. 671, 674), the purpose of the enactment of section 115-a of the Surrogate's Court Act was merely to endow the surrogate with co-ordinate authority to fix and enforce the liability of a surety upon a bond given in his court where otherwise a resort to an action in another tribunal for the purpose was essential. The result of this grant of authority did not, however, in any material particular, alter the nature of the factual demonstration requisite to a grant of relief but merely permitted the suitor to achieve it, where warranted, in a new forum. As in other instances of the grant of co-ordinate jurisdiction to a new tribunal, the underlying bases of relief are to be amalgamated, as closely as may be, to those previously in vogue in the court of primary jurisdiction. (*Matter of Ashner*, 231 App. Div. 127, 130; *Matter of Manzi*, 155 Misc. 670, 677; *Matter of Rosenberg*, 157 id. 490, 494.)

Unless expressly limited in the grant, the powers of the tribunal to which the new authority is accorded are to be deemed co-extensive with those of the one formerly possessing exclusive power. Consonant with this principle, it follows that the Surrogate's Court, under section 115-a of the Surrogate's Court Act, now possesses authority to adjust the relative rights of a number of parties possessing an aggregate of claims in excess of the penal sum of the bond of a surety similar to that inherent in the Supreme Court prior to the effective date of the enactment. (Cf. *Guffanti* v. *National Surety Co.*, 196 N. Y. 452, 457.)

Since, however, a recovery by any person on a bond in the Supreme Court would be conditioned on a demonstration of the occurrence of facts and the transpiring of events requisite to the maturing of the right against the surety, such a showing is equally a condition precedent to any recovery in this court.

A basic essential to any recovery against a surety is a demonstration of a default in the performance by the principal obligor of the obligation primarily resting upon him. (*Matter of Penna*, 160 Misc. 525, 527, and authorities there cited.)

In the present case the record may be searched in vain for any intimation that the administratrix has failed to make any one of the directed payments other than that due the petitioner. There is consequently nothing in the record upon which the court can base a determination fixing the liability of the surety to any person other than the petitioner.

If, as in the usual case, the rights of the creditors of the principal were equal, so that all were entitled to share *pari passu* in the lesser obligation of the surety, this lack of demonstration of their aggregate existing rights against the principal would be fatal to any determina-

tion regarding their respective individual rights, since a payment, if made, by the principal debtor to one of their number would not effect a *pro tanto* reduction of the obligation of the surety on its bond, so long as the aggregate sum owed to all unpaid obligees was more than the total amount of the bond, with the result that the amount recoverable from the surety by each unpaid creditor would be increased.

In the present instance, however, this is not so. Under the terms of the decree, direct and express preferences are given, first, for expenses of administration, totaling $699.83, and then for the judgments of $2,446.51, $955.42 and $255.63 in order. If the principal debtor pays nothing, the obligation of the surety will be exhausted in the payment of the administrations expenses, the first judgment in full, and a partial payment of $353.66 on the second judgment, with the result that the second judgment creditor will fall $601.76 short of complete payment, and the third judgment creditor will receive nothing.

No matter what transactions may have taken place between the administratrix and the payees under the decree other than the present petitioner, therefore, the latter, on the uncontroverted demonstration of the petition is entitled to receive the sum of $2,446.51 directed by the decree to be paid by the administratrix in satisfaction of her judgment, and payment of this sum by the surety will be directed. Upon its payment the potential liability of the surety on its bond will be reduced to the difference between this sum and $3,500, namely, $1,053.49.

The person or persons, if any, to whom it will be compelled to pay this additional sum are incapable of determination until an adequate demonstration has been made respecting the sums, if any, which the administratrix has personally paid to the other payees named in the decree.

A word of final comment should be addressed to the apparent position of the surety respecting the waiver by the principal debtor of the conditions imposed by section 115-a respecting the issuance and return of an execution. This somewhat absurd and wholly anachronistic requirement is not for the benefit of the principal debtor but for that of the surety. The reason for its original inclusion in the section was undoubtedly analogous to that motivating the inclusion of the similar requirement formerly contained in section 775 of the Civil Practice Act relative to proceedings to examine a judgment debtor, but subsequently eliminated as onerous and useless (Laws of 1935, chap. 630), namely, of affording tangible evidence of the non-payment of the obligation in question. It follows that if any waiver thereof is to take place, it must primarily

be by the surety and perhaps also by another party whose rights would be affected by the fact of such payment. The judgment debtor possesses no vested right in having his obligations enforced in any specific manner which falls short of a deprivation of civil rights.

It follows that before any other party to the original decree may be permitted to recover from the surety, he must demonstrate in the manner provided by law that the sums due him under the decree are still unpaid, upon which issue not only the surety but any other party to the decree whose rights would be affected adversely by a further exhaustion of the liability of the surety, will be entitled to be heard.

Enter decree on notice in conformity herewith.