**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION,**
Plaintiff, Appellant,

v.

**MARYLAND CASUALTY COMPANY,**
Defendant, Appellee.

No. 6819.

United States Court of Appeals
First Circuit.

Heard Feb. 10, 1967.

Decided March 31, 1967.

Robert E. Schneider, Jr., San Juan, P. R., for appellant.

Gaspar Rivera Cestero, San Juan, P. R., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Broadly, the question presented here is whether the defendant as surety on the performance bond of a prime contractor is liable to the plaintiff materialman for goods ordered by and delivered to a subcontractor and used in the performance of his subcontract. The essential facts are stipulated by the parties. In February, 1960 Miramar Hotel Corporation entered into a private construction contract with a firm called Bertran-Walker for the installation of certain plumbing, air conditioning and mechanical ventilation in its hotel in San Juan, Puerto Rico. With the consent of Miramar, Bertran-Walker subcontracted part of the work covered by the contract to a company called Williams Plumbing. About two months later Bertran-Walker as principal and the defendant as surety executed and delivered to Miramar the performance bond involved in this case.[1]

In the course of its work under the subcontract Williams Plumbing purchased a substantial amount of materials from the plaintiff which admittedly were used in and became part of the installation covered by the prime contract. Williams Plumbing did not pay for these materials and plaintiff now seeks to collect from the defendant as surety on the prime contractor's performance bond.

The district court dismissed the complaint on the ground that it does not appear that plaintiff ever had any dealings or that it ever contracted directly with the prime contractor for the purchase of these materials.[2]

On appeal, plaintiff's principal contention is that under the liberal construction now applied to performance bonds by the Supreme Court of Puerto Rico,[3] it is entitled to recover against the defendant surety on the theory that it is an unnamed third party beneficiary under the bond.[4] In support of this position plaintiff relies primarily on the recent cases of Anibal L. Arzuaga, Inc. v. La Hood Contractors, Inc., P.R.R. , February 20, 1964 (P.R. Bar Assoc. Adv. Shts. 1964–36); Goss v. Structural Concrete Products, P.R.R. , May 19, 1965 (P.R. Bar Assoc. Adv. Shts. 1965–89); and on certain language contained in Ferrer v. Alliance Company of Puerto Rico, P.

1. This bond provides in pertinent part as follows: " * * * and further, that if Principal shall pay all persons who have contracts directly with Principal for labor or materials furnished pursuant to the provisions of said Contract, failing which such persons shall have a direct right of action against Principal and Surety under this obligation, subject to Obligees' priority, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

2. Initially the trial court denied defendant's motion to dismiss the complaint as well as its subsequent motion for reconsideration. In its brief plaintiff uses the denial of these motions as the basis for his contention that the "law of the case" doctrine should be applied here, citing White v. Higgins, 116 F.2d 312 (1st Cir. 1940). During the oral argument plaintiff expressly waived this contention.

3. See Cristy & Sanchez v. Commonwealth, 84 P.R.R. 226 (1961).

4. It also contends that under the bond the subcontractor stands in the same position as an assignee of the prime contractor and therefore the surety's liability extends to plaintiff for the materials supplied by it to the assignee. Plaintiff further contends that since the defendant knew about the subcontract when it assumed its obligation under the bond had it wished to insure the prime contractor only, it could have specifically excluded the work to be done under the subcontract or could have required the subcontractor to furnish a separate bond. Having done neither the surety thereby indicated that it also intended to cover the subcontractor, including the payment for materials supplied to the subcontractor for the job. We find no merit in either of these contentions.

R.R. , January 4, 1966 (P.R. Bar Assoc. Adv. Shts. 1966–1). It should be noted, however, that the obligation of the bonds in both *Arbuaga* and *Ferrer* was materially different from that in the instant case.[5] In addition, *Ferrer* dealt only with a claim for labor which under Puerto Rican law is in an entirely different category from the claim of a materialman.[6] This latter case may be further distinguished from the instant one by the fact that the claimant there was a subcontractor and not, as here, a supplier of the subcontractor. While the obligation of the bond in *Goss* is practically the same as in this case, there the plaintiff furnished crane service under a contract *directly* with the principal on the performance bond.

Without further discussion of these cases and the many other cases and authorities cited therein, suffice it to say that although the obligation of the bond in *Arzuaga,* supra, is entirely different from the one before us, the right of a materialman under Puerto Rican law to recover against the surety on a construction bond is clearly stated in *Arzuaga* and represents the present law of the Commonwealth. In that case the court adopted the standard laid down by the Restatement, Security § 165 (1941), which reads as follows:

"Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, *unless* the *surety's contract in terms disclaims liability to such persons.*" [7] (Italics ours)

The surety here is bound only by the contract it made—nothing else. Thus, the extent of its obligation is a matter of the intention of the parties as determined by the rules governing the interpretation of contracts. From an examination of the surety's contract (the bond) in this case, it is crystal clear that the parties did not intend to protect persons in the position of this plaintiff but on the contrary intended to limit and did limit the surety's liability to persons "who have contracts directly with the Principal for labor and materials furnished. * * *" Hence, all others are excluded.[8]

There is no allegation in the complaint nor does it appear elsewhere in this case that the plaintiff had any contract or any other dealings directly with the principal (Bertran-Walker) with reference to purchase of the materials in question. For that reason, it is our opinion that plaintiff is not entitled to recover against the defendant surety company.

Affirmed.

---

**5.** In those two cases the obligation of the bond ran to "*all persons* supplying labor and material." (Italics ours)

**6.** In the instant case plaintiff supplied materials only and consequently the holding in *Ferrer* is inapplicable. For that reason we need not consider whether the bond in our case was executed before or after the effective date of Act No. 111 of June 22, 1961, 29 L.P.R.A. § 195 et seq. (Supp.1964, p. 127), relied upon in *Ferrer* and also by the district court in this case.

**7.** It is interesting to note that the recent case of Ferrer v. Alliance Company of Puerto Rico, supra, although clearly distinguishable from the instant one, also cited this Restatement rule with approval.

**8.** In Hartford Acc. & Ind. Co. v. W. & J. Knox Net & Twine Co., 150 Md. 40, 132 A. 261 (1926), the court was called upon to interpret a bond in which the obligation of the surety was identical with the surety's obligation under the bond in the instant case. The court held that this obligation was limited to persons who contracted directly with the principal.

Moreover, such an interpretation in the instant case is in keeping with Section 1233 of the Civil Code which states in effect that if the terms of a contract are clear the literal interpretation controls.