**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**WESTCHESTER FIRE INSURANCE**
**COMPANY, Defendant-Appellee.**

**No. 414, Docket 72–2015.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 15, 1973.

Decided April 30, 1973.

William S. Estabrook, III, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Grant W. Wiprud, Attys., Tax Div., James M. Sullivan, U. S. Atty., N. D. N. Y., Eugene Welch, Asst. U. S. Atty., of counsel), for plaintiff-appellant.

Vincent A. O'Neil, Syracuse, N. Y. (Costello, Cooney & Fearon, Syracuse, N. Y., of counsel), for defendant-appellee.

Before FRIENDLY, Chief Judge, OAKES, Circuit Judge, and DAVIS,* Judge.

DAVIS, Judge:

This action by the Federal Government against a surety on a New York probate-administration bond concerns the estate of Louis Abronzino, a New York resident who died intestate in May 1962. About a month later, appellee Westchester Fire Insurance Company issued the administration bond for the sum of $30,000 to Frances Abronzino, the intestate's widow, who was appointed administratrix by the Surrogate's Court for Broome County, New York. The suretyship agreement stated that Westchester Fire was jointly and severally bound with the administratrix, but the bond was conditioned as follows:

> if the above bounden Frances Abronzino shall faithfully execute the trust reposed in her as Administratrix of all and singular the goods, chattels and credits of Louis Abronzino late of Broome County, deceased, and obey all lawful decrees and orders of the Surrogate's Court of the County of Broome touching the administration of the estate committed to her then this obligation to be void, else to remain in full force or virtue.

According to the Government's complaint, in June 1964 the Internal Revenue Service assessed both husband and wife for joint income tax deficiencies totaling $5,638.77, and served notice of these assessments. The complaint goes on to allege that Mrs. Abronzino, knowing of the federal claim against her husband's estate, proceeded to dissipate fraudulently the assets of the estate to the point of insolvency. She subsequently died in June 1965, while acting as administratrix. It is admitted that, as yet, neither the Surrogate's Court nor any other judicial tribunal has determined that Mrs. Abronzino violated her trust as administratrix or failed to obey any decree or order of the Surrogate's Court.

Without seeking any determination against Mrs. Abronzino (or her estate), or against Mr. Abronzino's estate, the United States brought this suit (in 1970) in the District Court for the Northern District of New York directly

* Of the United States Court of Claims, sitting by designation.

against the appellee surety, on the bond, for the tax deficiencies said to be owing.[1] That court granted summary judgment to Westchester Fire, holding that the Government had failed to meet the requirement of the bond, and of New York law, that the fiduciary's liability must first be ascertained and determined by the Surrogate's Court before the surety's liability can attach under the bond. We concur that the condition precedent of a judicial determination of the principal's responsibility has not as yet been satisfied, and therefore affirm.

If this were an action against the administratrix, Mrs. Abronzino, or her estate, the United States would undoubtedly have solid footing (if it proved its claim). Rev.Stat. § 3467, now section 192 of Title 31 of the United States Code,[2] makes an administrator liable personally to the Government if he pays another estate debt before one due the United States. The purpose of this provision "is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid." This element of control determines the class potentially liable under the section. King v. United States, 379 U.S. 329, 337, 85 S.Ct. 427, 431, 13 L.Ed. 2d 315 (1964). Actions can be maintained against members of that class irrespective of the outcome of any prior proceedings in probate court. See United States v. Snyder, 207 F.Supp. 189, 191 (E.D.Pa., 1962); United States v. Weisburn, 48 F.Supp. 393, 397 (E.D.Pa., 1943). Nor need the United States initially bring suit against the party primarily liable before proceeding against

the executor, administrator, assignee, "or other person" who pays a debt for another. In United States v. Fairall, 16 F.2d 328 (S.D.N.Y., 1926), Judge Learned Hand made it quite clear that, at least in the case of transferees, "[the] rule that you must get judgment and issue execution against a debtor as a condition precedent to following his assets into the hands of transferees is not absolute." Equity did not insist upon "such an idle formality" in the face of impossibility of judgment or futility of execution. *Id. See* Commissioner v. Kuckenberg, 309 F.2d 202, 206 (C.A. 9, 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963); United States v. Garfunkel, 52 F.2d 727, 729 (S.D.N.Y., 1931); Drew v. United States, 367 F.2d 828, 831, 177 Ct.Cl. 459, 462 (1966). Similarly, the United States, in collecting taxes, is not always "expected . . . to follow the procedural intricacies of every one of the fifty states," Commissioner v. Kuckenberg, *supra*, 309 F.2d at 207, again at least when concerned with transferees.

These are the controlling rules when litigation is had against the administrator or executor upon whom section 192 imposes a direct statutory liability to the United States. But appellee Westchester Fire is not an administrator, executor, assignee or otherwise within the coverage of the statute. It did not pay a non-federal debt of Louis Abronzino's estate before satisfying one due the United States—nor was it in a position to do so. Its liability does not flow from this federal statute but from the terms of the particular obligation it undertook.[3] This would be true if the

---

1. The District Court had jurisdiction under 28 U.S.C. §§ 1340, 1345, and 26 U.S.C. § 7402.

2. Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the ex-

tent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

3. It may be that an action invoking section 192 may be jointly brought against both the principal-executor and the surety if the latter's obligation encompasses the Government's claim. *See* United States v. Rose, 227 F.Supp. 259 (E.D.Pa., 1964) (surety's joinder apparently not questioned), aff'd on other grounds, 346 F.2d

bond had been directly given to secure payment of a federal tax—in that case the surety's obligation creates "a new cause of action distinct from that on the taxpayer's obligation", an obligation which is "contractual * * *, and the suit against [the surety] is for a debt, *ex contractu,* due and owing in conformity to the terms of the bond." Royal Indemnity Co. v. United States, 313 U.S. 289, 293–294, 295, 61 S.Ct. 995, 996, 997, 85 L.Ed. 1361 (1941). All the more so where, as here, the surety's responsibility is on a general administration bond, issued for normal probate purposes, and *not* directly involving the Federal Government or accepted by it.[4]

The bond which Westchester Fire gave to cover Mrs. Abronzino's performance as administratrix—a form obviously used regularly by the appellee—was historically and integrally bound up with the particular provisions of New York probate law dealing with the liability of sureties. One of the two stated conditions, expressly required by the Surrogate's Court Act,[5] was that the principal "obey all lawful decrees and orders of the Surrogate's Court of the County of Broome touching the administration of the estate committed to her." When the instrument was issued in 1962, two other provisions of the same Surrogate's Court Act indicated as clearly as possible that the surety would not be pursued until the principal's default had been established.[6]

Behind these specific directives of the Surrogate's Court Act there lay more than a century of history in the state forbidding an action against the surety of an executor or administrator until the latter's liability had been determined. The New York statutes required as early as 1837 that "before any action can be maintained against the sureties,

985 (C.A.3, 1965), cert. denied sub nom. Aetna Ins. Co. v. United States, 382 U.S. 979, 86 S.Ct. 551, 15 L.Ed.2d 469 (1966).

4. The formal obligee of the bond was the "People of the State of New York."

5. Section 121 of the Surrogate's Court Act (13–A Gilbert-Bliss, Civil Practice of New York Annotated 208, 227):
    "Before letters are issued to an administrator he must file his official oath, and execute to the people of the state, and file with the surrogate, the joint and several bond * * *. The bond must be conditioned that the administrator will faithfully discharge the trust reposed in him as such and obey all lawful decrees and orders of the surrogate's court touching the administration of the estate committed to him."

6. These two sections were as follows:
    § 113 Where an execution, issued upon a surrogate's decree, against the property of an executor, administrator, testamentary trustee, or guardian, has been returned wholly or partly unsatisfied, an action to recover the sum remaining uncollected may be maintained upon his official bond by and in the name of the person in whose favor the decree was made. * * *
    § 115–a(1) Where a decree has been made in any proceeding directing payment by an executor, administrator,

temporary administrator, testamentary trustee or guardian, and execution against the property of such fiduciary has been returned wholly or partly unsatisfied, a petition may be presented by any person interested to the surrogate and citation issued to the surety * * or the representatives of a deceased surety, to show cause why the liability of the surety * * * should not be fixed and determined. * * * Where the executor, administrator * * * has died before or after the making of the decree directing payment, the issuance of execution shall not be required. * * *
    13A Gilbert-Bliss, Civil Practice of New York Annotated 208, 211 (3d ed. 1953). Section 113 dealt with suit in a state court other than the Surrogate's Court. Section 115–a provided a parallel route in Surrogate's Court. These were the relevant sections at the time of the execution of the bond.
    In 1966, the Surrogate's Court Act was replaced by the Surrogate's Court Procedure Act and the material provisions were altered to omit the requirement of attempted execution before suit against the surety. Now, the action can be brought upon permission of the court. *See* N.Y. Surr.Ct.Proc.Law § 809 (McKinney 1967). The new statute does not apply to bonds executed before passage. *See* N.Y.Surr.Ct.Proc.Law § 810 (McKinney 1967).

there must be a decree against the executor, a refusal or neglect to perform it, or an execution returned unsatisfied, and an order of the surrogate authorizing the prosecution of the bond." The surrogate formally assigned the bond to the person in whose favor the decree was made, but such an assignment only granted permission to prosecute the bond. "[N]otwithstanding the assignment, the surrogate retains the custody of the bond for the common benefit of all persons having claims against the estate * * *." Hood v. Hood, 85 N.Y. 561, 573 (1881). Compliance with the statutory regulations was necessary for any action upon the bond. *Id*. at 573–574. By having an accounting in Surrogate's Court, the liability of a surety could be limited "to the amount of the assets which have, or should have, come into the hands of the administrator." In re Kraft's Estate, 167 Misc. 16, 18, 3 N.Y.S.2d 426, 427–428 (Sur.Ct., 1938); *see* French v. Dauchy, 134 N.Y. 543, 547, 31 N.E. 1041, 1042–1043 (1892).

There have been some statutory alterations, *e. g.* the requirement of formal assignment was dropped, but the general rule has remained unchanged. In re Sullard, 114 Misc. 288, 297, 186 N.Y.S. 251, 256–257 (Sur.Ct., 1921); *see* Hood v. Hayward, 124 N.Y. 1, 9, 10, 26 N.E. 331, 332, 333 (1891). Section 115–a, *supra* note 6, was added to the Surrogate's Court Act in order to eliminate some of the procedural complexity once there was an initial judgment of liability by the surrogate. Before its passage a claimant against an estate frequently discovered that, after his demand had been adjudicated in Surrogate's Court, with the surety company as a party to the action, the claimant (creditor or distributee) "was compelled to go before another tribunal to enforce his unquestionable rights against the surety * * *. This was an unnecessary and intolerable burden which the Legislature * * * wisely removed" as part of its

general intent to concentrate jurisdiction of decedent's estates matters in the Surrogate's Court. In re Gellis' Estate, 141 Misc. 432, 440, 252 N.Y.S. 725, 735 (Sur.Ct., 1931). The occurrence of the events necessary for maturation of a right against the surety was to be the same under both section 113 and section 115–a. *See* In re Stern's Estate, 161 Misc. 272, 275, 291 N.Y.S. 732, 737 (Sur.Ct., 1936); In re Reppucci's Estate, 145 Misc. 671, 674, 261 N.Y.S. 213, 217 (Sur.Ct., 1932).

Thus, the New York administration surety's obligation is more a guaranty of collection (with conditions precedent to liability of the guarantor) than a guaranty of payment. *See* McMurray v. Noyes, 72 N.Y. 523, 524–525 (1878). Conversely, a corollary of the state's double mandate that collection be attempted first from the principal [7] and that the principal's responsibility be established before the surety is pursued, is that the latter may then proceed (if it can) to collect over from the former the amount paid the creditor without the principal's being in a position to contest his default under the bond. That liability will already have been decided in a proceeding binding on the principal.

The Hood v. Hood opinion, *supra,* mentioned the possibility of special exceptions to the general rule requiring court proceedings to come first. However, the examples of exceptional circumstances were very unusual, and this possibility of limitations on the general rule was early criticized. *See* Perkins v. Stimmel, 114 N.Y. 359, 367, 21 N.E. 729, 731 (1889). Certainly, the mere fact that the administratrix is dead is insufficient to waive an initial proceeding against her estate. In *Perkins*, a suit was dismissed against the sureties of a prior guardian who had died after only two inventories—it did not qualify as an exception. French v. Dauchy, *supra,* applied the same rule to the bond of a deceased receiver. Salisbury v. Van

---

7. Under § 115–a(1) of the Surrogate's Court Act, *supra* note 6, execution against the administrator-executor was dispensed with if he had died.

Hoesen, 3 Hill. 77 (discussed in Hood v. Hood) held that sureties could not be sued until there were an accounting by a guardian or, if dead, by his personal representatives. *See* Hood v. Hood, *supra*, 85 N.Y. at 576. Moreover, the terms of the bond in the present case bound the heirs, administrators, and successors of each of the parties, and the United States would therefore not lose its right against the surety by proceeding initially against Mrs. Abronzino's representative.

■ In the light of this firm and imbedded practice, fusing the surety's obligation with the special requirement of New York law, we construe appellee's bond as implicitly incorporating that requirement as a condition of the obligation, just as if it had been spelled out explicitly in words. This is undoubtedly what the appellee reasonably understood when it gave the bond. It had the full right to expect that its obligation to pay would not ripen until there had been a court determination that Mrs. Abronzino did not "faithfully execute the trust reposed in her" or did not "obey all lawful decrees and orders of the Surrogate's Court" relating to her husband's estate.[8]

It is unnecessary to decide now whether the principal's default must always be confirmed in the Surrogate's Court, as the New York legislation obviously contemplates, or whether such a prior determination in a suit in federal court against the executor-administrator under Rev.Stat. § 3467, 31 U.S.C. § 192, note 2, *supra,* could be sufficient. Here there has as yet been no determination by any tribunal that Mrs. Abronzino defaulted, and no such finding to which she or her estate or representative was a party. If the United States were allowed to proceed in this case and then prevailed, the appellee-surety might be forced to contest, all over again, the issue of Mrs. Abronzino's responsibility in an action against her estate to recover the amount paid over to the Federal Government.

The federal decisions on which appellant primarily relies (United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); Commissioner v. Kuckenberg, *supra,* 309 F.2d 202 (C.A. 9, 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963)) involved procedural requirements of state probate or transferee law which, it was held, the United States was not compelled to follow. The difference from the present case is, as we have said, that the New York requirement is not a mere procedural step but an ingrained part of the surety's substantive obligation. The surety does not breach, and is not liable on, its bond until the administratrix's wrongdoing has been judicially established in a proceeding—not yet had—to which she (or her representative) is a proper party.[9]

Affirmed.

8. At least one other federal court has faced a similar problem and reached the same conclusion. In United States v. Giger, 26 F.Supp. 624 (W.D.Ark.1939), the deceased was indebted to the Federal Government for an agricultural loan. After the original administrator resigned, the Government sought to hold the sureties personally liable. The court dismissed the action against the sureties for failure to state a cause for relief:

I do not think the statute [3 U.S.C. §§ 191 and 192] has anything to do with personal liability of sureties on bonds. If the sureties on the bonds are liable to the Government, it seems to me this action is premature. While it has been held that local laws cannot interfere with the priority given in this statute, yet the decisions of our [Arkansas state] courts are uniform in holding that "an action in such court of law on the (administrator's) bond is not sustainable until the probate court has adjusted the accounts of the administrator and has ordered him to pay over amounts found to be in his hands." 26 F.Supp. at 625.

9. Cases such as Downer v. United States Fidelity & Guaranty Co., 46 F.2d 733 (C.A.3 1931), involved other types of surety bonds in which the obligation was not conditioned on a prior court determination of the principal's default.