In re the SINKING OF the M/V
UKOLA (Crew Cases).

The OCEANUS MUTUAL UNDERWRIT-
ING ASSOCIATION, (BERMUDA)
LIMITED, Plaintiff, Appellee,

v.

IMPERIAL SUGAR COMPANY, et al.,
Defendants, Appellees.

Appeal of NATIONAL SURETY
CORPORATION.

No. 86–1412.

United States Court of Appeals,
First Circuit.

Argued Sept. 4, 1986.

Decided Nov. 24, 1986.

Francisco Castro Amy, San Juan, P.R.,
for appellant.

C. John Caskey, Baton Rouge, La., with
whom Herbert W. Brown, III, Peter J.
Satz, Calvesbert & Brown, San Juan, P.R.,
Reginald M. Hayden, Jr. and Hayden &
Milliken, Miami, Fla., were on brief, for
defendants, appellees Imperial Sugar Co.,
et al.

Before BOWNES and TORRUELLA, Cir-
cuit Judges, and CARTER,* District Judge.

* Of the District of Maine, sitting by designation.

BOWNES, Circuit Judge.

The National Surety Corporation (National) appeals from a grant of a motion for summary judgment by the United States District Court for the District of Puerto Rico in an interpleader action brought by the Oceanus Mutual Underwriting Association (Bermuda) Ltd. (Oceanus). Oceanus, as part of its interpleader action, had posted a bond underwritten by National. The court ordered payment under the bond to satisfy a judgment against Oceanus' insureds, Arosa Mercantil, S.A. (Arosa) and Inversiones Calmer, S.A. (Calmer), issued by the United States District Court for the Southern District of Florida. The Florida court had found Arosa and Calmer liable for property damage resulting from the sinking of the M/V Ukola. We affirm the Puerto Rico district court's ruling.

## I  BACKGROUND

In January, 1977, the M/V Ukola sank in the Gulf of Mexico en route to Galveston, Texas.[1] Twenty people died in the sinking, three survived. The ship was carrying 9,856,071 pounds of raw sugar belonging to the Imperial Sugar Company (Imperial) and insured by the Continental Insurance Company (Continental). The vessel was owned and/or operated by Arosa, a Panamanian corporation. Calmer, also a Panamanian corporation, was the operator/charterer of the Ukola.

Much litigation followed in the wake of the sinking. Two judgments resulting from that litigation are central to this appeal: (1) the judgment in the Florida district court awarding damages for the loss of the cargo; and (2) the judgment in the interpleader action begun in Texas and concluded in Puerto Rico.

### A.  The Florida Judgment

Numerous lawsuits were filed in several states claiming damages for the deaths, injuries and destruction of property caused by the sinking of the Ukola. The various cases were assigned Multidistrict Litigation Number 354. A suit filed by Imperial and Continental against Arosa and Calmer in the Florida district court for the loss of the sugar was consolidated with the Multidistrict Litigation package. Arosa and Calmer were represented by Oceanus throughout the Florida proceedings. On August 18, 1984, the Florida court found that defendants Arosa and Calmer had "failed to use due diligence to make the UKOLA seaworthy, and that that failure caused the sinking of the UKOLA." The court issued a "Final Judgment" in favor of Imperial and Continental in the amount of $1,007,-917.35, plus interest.

### B.  The Interpleader Judgment

In June, 1978, Oceanus filed an interpleader complaint in the United States District Court for the Southern District of Texas "against all persons alleging causes of action against Oceanus and its insureds, [Arosa and Calmer], for damages arising out of the sinking of the M/V Ukola...." Oceanus asserted that the total claims for damages still outstanding exceeded the limits of liability remaining on the insurance policy that it had provided. Oceanus alleged that, after settling eight claims and subtracting legal fees and the deductibles provided for in the policy, a total of $445,-905.98 remained. With National as surety, Oceanus posted a bond for that amount with the Texas court. In July, 1984, the interpleader suit was stayed pending the outcome of the Florida damages litigation. In October, 1984, the interpleader action was transferred to Puerto Rico.

Meanwhile, on March 23, 1984, a voluntary petition for bankruptcy, under chapter 7 of the Bankruptcy Act, had been filed on behalf of Oceanus by contractually appointed receivers in the United States Bankruptcy Court for the Southern District of New York. An involuntary petition by court-appointed liquidators followed on May 1, 1984. In March, 1985, Oceanus filed a notice of automatic stay in the interpleader

---

1. We have drawn mostly on the Florida and Puerto Rico district courts' opinions for the rather complicated factual and procedural history of this case.

action in the Puerto Rico district court pending the bankruptcy proceedings, pursuant to 11 U.S.C. § 362 (1982).

In September, 1985, Imperial, Continental, Arosa, Calmer and personal injury and wrongful death claimants moved the Puerto Rico District Court for summary judgment against Oceanus and/or its surety, National. The movants, appellees herein, contended that there was no reason why the $445,905.98 should not be immediately paid to Imperial and Continental to satisfy the Florida judgment entered in their favor against Arosa and Calmer.[2] The district court granted the motion. It noted that the insurance proceeds could not be collected from Oceanus due to its "precarious economic condition" and that judgment could not be entered against Oceanus because of the automatic stay arising from the bankruptcy proceedings. The court entered a judgment against National for the amount of the bond.

## C. Appellate Jurisdiction

The threshold issue is whether the summary judgment has the finality required for appellate jurisdiction under 28 U.S.C. § 1291 (1982). The standard for finality in an interpleader action was stated in *Insurance Co. of North America v. Bay*, 784 F.2d 869, 872 (8th Cir.1986): "A judgment is final in an interpleader action when the court determines the claimants entitled to the money and the amount due each claimant."

In view of the procedural history of this case, we find that the summary judgment constituted a "final decision" for appellate jurisdictional purposes. The movants for summary judgment in the district court included personal injury and wrongful death claimants, as well as Imperial, Continental, Arosa and Calmer. The district court found that it "appear[ed] ... that there is no objection to the disbursement of these funds by any of the other defendants in this interpleader." To ensure that there

were in fact no such objections, the court issued an order, dated March 4, 1986, allowing all parties until April 1, 1986, to inform the court if any other claims were pending in the action. Barring any such notification, the case would be "deemed concluded pursuant to the summary judgment."

The district court ruled on the motion for summary judgment after finding that it "appear[ed]" that "a final judgment ha[d] been entered against Arosa and Calmer with respect to the cargo claims" in the Florida district court. In fact, the Florida court had issued an order, dated August 18, 1984, which stated that "FINAL JUDGMENT is hereby entered in favor of Plaintiffs, [Imperial] and [Continental]."

■ Although our decision concerns the propriety of the Puerto Rico court's judgment, Oceanus' automatic stay pending bankruptcy proceedings does not affect the finality of that judgment. A general principle of bankruptcy law is that the liability of a surety is not affected by the discharge of the principal debtor. 11 U.S.C. § 524(e) (1982); *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985); *In re General Steel Tank Co.*, 478 F.2d 294, 296 (4th Cir.1973). This principle "rests on the premise that a discharge is personal and that it results from the operation of the law, not the consent of the creditor." *In re General Steel Tank Co.*, 478 F.2d at 296; 9A Am. Jur.2d *Bankruptcy* § 782 (1980). Therefore, the Puerto Rico District Court's judgment constitutes a final judgment against National for jurisdictional purposes notwithstanding Oceanus' bankruptcy proceedings.

## II THE INTERPRETATION OF THE BOND

The summary judgment motion was argued and decided on the basis of a single issue: the proper interpretation of the terms of the bond posted by Oceanus and its surety, National. The bond states:

2. The movants also contended that shortly before the accident Oceanus unilaterally reduced the amount of coverage from $1,500,000 to

$750,000. They asserted that this action was without consideration and that it had no legal effect. This question, however, is not before us.

WHEREAS, in the above entitled and numbered cause, pending in the United States District Court for the Southern District of Texas, Houston Division, [Oceanus], Plaintiff in the above entitled and numbered cause, filed a Complaint and Bill in the Nature of an Interpleader against various and sundry Defendants in connection with claims for money damages being asserted against Plaintiff by the named Defendants in connection with an incident more fully described in the Complaint and Bill in the Nature of an Interpleader; and,

WHEREAS, contemporaneous with the filing of the Complaint and Bill in the Nature of an Interpleader [Oceanus] as principal, and [National], as Surety, bound themselves to deposit into the Registry of this Court and to pay unto the District Clerk of the District Court of the United States for the Sourthern [sic] District of Texas, Houston Division, and his successors and assigns, pursuant to the provisions of 28 U.S.C.A., § 1335, the sume [sic] of FOUR HUNDRED FORTY-FIVE THOUSAND NINE HUNDRED FIVE AND 98/100 ($445,905.98) DOLLARS lawful money of the United States of America;

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That we, [Oceanus], as principal and [National] as surety, acknowledge ourselves bound to pay to the said V. Bailey Thomas, District Clerk of the District Court of the United States for the Southern District of Texas, Houston Division, and his successors and assigns, pursuant to the provisions of 28 U.S.C.A., § 1335, the sum of [$445,905.98], conditioned that [Oceanus] shall well and truly pay any judgment and all costs that may be awarded against [Oceanus] by the United States District Court for the Southern District of Texas, Houston Division, with respect to the subject matter of this Complaint and Bill in the Nature of an Interpleader and [Oceanus] shall perform the Court's judgment, sentence or decree and pay all such damages as said Court may award against [Oceanus].

National urges a strict interpretation of the clause providing that Oceanus and/or National would pay the bond "conditioned that" Oceanus "shall well and truly pay any judgment and all costs awarded against [Oceanus]" and that Oceanus shall "pay all such damages as said Court may award against [Oceanus]." According to National, this clause makes the entering of a judgment against Oceanus a condition precedent to National's liability as surety. It contends that since the Florida judgment was entered only against Arosa and Calmer, and not specifically against Oceanus, the "conditioned" clause precludes a court from imposing on National any obligation based on the bond. Appellees argue that National's interpretation would isolate the "conditioned" clause from the context of the bond as a whole, as well as from the context of the interpleader action for which the bond was executed.

■ The principles to be applied in the interpretation of surety contracts have been articulated in a wide variety of circumstances. Generally, surety contracts are subject to the same rules of construction as other contracts. *American Radiator and Standard Sanitary Corp. v. Maryland Cas. Co.*, 374 F.2d 839, 841 (1st Cir.1967); *National Surety Co. of New York v. Ulmen*, 68 F.2d 330, 333 (9th Cir. 1933), *cert. denied*, 292 U.S. 624, 54 S.Ct. 629, 78 L.Ed. 1479 (1934). The terms of surety obligations, therefore, "should be interpreted as a whole, and not out of the context of all the other terms." *Martin v. Vector Co.*, 498 F.2d 16, 23 (1st Cir.1974) (citing 3 A. Corbin, Corbin on Contracts § 549 (1960)). Moreover, it is well established that a bond and the contract which it was written to guarantee should be read together when the bond makes appropriate reference to the contract. *Massachusetts Bonding and Insurance Co. v. Feutz*, 182 F.2d 752, 756–57 (8th Cir.1950); *Indemnity Co. v. Basich Bros. Construction Co.*, 165 F.2d 649, 650 (9th Cir.1948), *cert. denied*, 334 U.S. 833, 68 S.Ct. 1347, 92 L.Ed. 1760 (1948). Indeed, "a surety's obligation should be construed by reading together all

instruments, statutes, and regulations underlying the transaction." *St. Paul Fire and Marine Ins. Co. v. Commodity Credit Corp.,* 474 F.2d 192, 199–200 (5th Cir.1973) (cites omitted); *see also* 3 A. Corbin, Corbin on Contracts § 549.

Our interpretation of the bond in light of the foregoing principles must, therefore, proceed in several stages. We first look at the document's language as a whole. The first two paragraphs of the bond, each beginning with "WHEREAS," state the reasons for its execution. The first paragraph refers to the Complaint and Bill in the Nature of an Interpleader filed with the Texas court, the second to the "contemporaneous" binding of Oceanus and National to pay $445,905.98 "pursuant to the provisions of 28 U.S.C.A., § 1335." The third paragraph, the acknowledgment of the duty to pay, which includes the disputed "conditioned" clause, is stated as a conclusion from these premises: "NOW, THEREFORE, KNOW ... That we [Oceanus and National] ... acknowledge ourselves bound to pay...."

■■■■ Thus, Oceanus' and National's statement of their obligation must be understood as a consequence of the interpleader complaint and the requirements of the interpleader statute. An examination of the statute, 28 U.S.C. § 1335 (1982), reveals the function of the requirement of posting a bond in an interpleader action:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader ... if

... (2) the plaintiff has deposited such money or property or has paid the amount of the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

The deposit of money, property or a bond with the court is a prerequisite for obtaining jurisdiction over an interpleader action. *Smith v. Widman,* 627 F.2d 792, 798 (7th Cir.1980); 3A J. Moore & J. Lucas, Moore's Federal Practice § 22.10 (2d ed. 1986). According to the provisions of § 1335(a)(2), money or property deposited in interpleader is to "abide" the "judgment of the court"; similarly, a bond must be of an "amount and with such surety" as would be appropriate in view of the "subject matter of the controversy." The determination of the appropriate deposit "depends upon the person who invokes interpleader and what he asserts to be the subject matter of the controversy." *Kitzer v. Phalen Park State Bank of St. Paul,* 379 F.2d 650, 652 (8th Cir.1967). A court may not assert jurisdiction over an interpleader action where the money, property or bond could not suffice to pay the largest amount in controversy. *Metal Transport Corp. v. Pacific Venture Steamship Corp.,* 288 F.2d 363, 365 (2d Cir.1961); *New York Life Ins. Co. v. Lee,* 232 F.2d 811, 815 (9th Cir.1956); *Edner v. Massachusetts Mutual Life Ins. Co.,* 138 F.2d 327, 329 (3d Cir. 1943); *United Artists Corp. v. Fields Productions, Inc.,* 363 F.Supp. 903, 905 (S.D. N.Y.1973); 3A Moore's Federal Practice § 22.10.

We, therefore, turn to Oceanus' interpleader complaint to determine the scope of the possible judgments which the bond was intended to "abide." The complaint makes several references to claims against Oceanus, Arosa and Calmer. Oceanus filed its interpleader complaint against "all persons alleging causes of action against Oceanus and its insureds". The need for the interpleader, the complaint explains, stems from the multiple actions outstanding "against either Oceanus and its assureds Arosa and/or [Calmer]." "As insurer," the complaint states, "Plaintiff [*i.e.,* Oceanus] undertook to defend its insureds in all the litigation...." Oceanus denies liability but states that "in the event that it is mistaken in this belief and there is liability

to these claimants, the Plaintiff, contemporaneous with the filing of this Complaint and Bill in the Nature of an Interpleader, has deposited with the Clerk of this court good and sufficient bond...." Accordingly, "PREMISES CONSIDERED," Oceanus moves that "if it be found that the plaintiff *and/or its insureds [Arosa] and/or [Calmer]* are liable to the defendants for any damages, the defendants be required to interplead and settle between themselves their rights, if any, to the sum of money deposited and that Plaintiff be fully and finally discharged from any liability resulting from this incident...." (Emphasis added.) The complaint by its very words sought to require the interpleading of all claims against Arosa and Calmer, as well as against Oceanus. The bond, filed "contemporaneously," would be the source of funds from which to satisfy all such claims.

The requirement of a sufficient bond makes sense in view of a plaintiff's goal in an interpleader action. One who files an interpleader seeks to be relieved of any future obligation arising from the controversy. Thus, here, as we have just noted, the complaint states that Oceanus was seeking to be "fully and finally discharged from any liability."

We must assume that Oceanus and National intended the bond to satisfy the requirements of 28 U.S.C. § 1335, as, indeed, the bond stated was its purpose. The bond obligated Oceanus and National to satisfy any judgment arising from the interpleader action out of the funds guaranteed by the bond. The complaint repeatedly stated that it sought to require *all* claimants

against "Oceanus and its insureds" to interplead their claims and that Oceanus was posting a bond to pay any judgment arising therefrom.

In view of the foregoing analysis, we reject the interpretation of the bond now urged by National. Under National's interpretation, the bond would only have covered judgments against Oceanus, not against Oceanus' insureds. It follows, therefore, that the bond would not have covered the range of possible claims to be adjudicated under the interpleader. This interpretation would mean that there has always been a substantial discrepancy between the terms of the interpleader complaint and those of the bond. Such a discrepancy would conflict with the jurisdictional principles, outlined above, which require a sufficient bond appropriate to the "subject matter of the controversy." The appellant's interpretation of when payment could be had under the bond would defeat the parties' intent as it emerges from a reading of the interpleader complaint together with the bond; it would also cast a shadow on years of litigation.

■ We find that the only plausible interpretation of the bond is that the "conditioned" clause referred not only to judgments directly entered against Oceanus but also to those judgments for which Oceanus would be indirectly liable through its insureds, Arosa and Calmer.[3] Only this interpretation allows us to take into account the "instruments, statutes, and regulations underlying the transaction," *St. Paul Fire*, 474 F.2d at 199–200, and, most importantly,

---

3. Appellant cites *United States v. Westchester Fire Ins. Co.*, 478 F.2d 133 (2d Cir.1973), for the binding validity of a requirement that a judgment be entered as a condition precedent to liability. That case required a court judgment against an administratrix before the government could proceed against the administratrix' insurance company. That requirement, however, stemmed not from a strict construction of the terms of the insurer's obligation, but from New York statutory history. The court stated:

In light of this firm and imbedded practice, fusing the surety's obligation with the special requirement of New York law, we construe appellee's bond as implicitly incorporating

that requirement as a condition of the obligation, just as if it had been spelled out explicitly in words.

*Id.* at 138. In *Westchester Fire*, then, the court inferred a provision not explicitly stated in the document because such a provision was clearly implied by the relevant, in that case statutory, context. That the requirement in *Westchester Fire* happened to be that of a prior judgment does not affect the principle of interpretation the court there applied. *Westchester Fire* calls for a contextual construction of surety documents like the one we have pursued in the present case.

to give a comprehensible meaning to the bond itself in light of its stated purpose.

We, therefore, agree with the Puerto Rico district court that National should be required to pay $445,905.98 to Imperial and Continental. We agree, as well, with the district court's basic procedure of construing the bond and the interpleader complaint together. We would not, however, state, as did the district court, that this construction "negates the necessity of a judgment as a condition precedent." We find, rather, that the "conditioned" clause, when interpreted contextually, as it should be, implicitly includes judgments against Arosa and Calmer as well as against their insurer, Oceanus.

*Affirmed.*